865 F.2d 269
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Franklin D. HARRIS, Petitioner,
v.
DEPARTMENT OF the NAVY, Respondent.
 No. 88-3387.
 United States Court of Appeals, Federal Circuit.
 Dec. 30, 1988.
 
 Before FRIEDMAN, RICH and PAULINE NEWMAN, Circuit Judges.
 PER CURIAM.
 
 DECISION
 
 1
 This appeal is from the decision of the Merit Systems Protection Board (board), docket number SF075287C9033, denying Harris's petition to enforce a settlement agreement between Harris and the Department of the Navy (Navy). We vacate and remand.
 
 OPINION
 
 2
 Our review of board decisions is limited, but we must set aside any agency action not in accordance with law. 5 U.S.C. 7703(c) (1982). Here, the administrative judge (AJ) erred as a matter of law in construing the settlement agreement between Harris and the Navy. The AJ erred by implicitly concluding that, because the agreement was silent with respect to the SF-50, the Navy's insertion of derogatory remarks on the SF-50 could not violate the agreement. Res.App. 8. Accordingly, we vacate the board's decision. Since we cannot determine from the record whether the SF-50 does violate the agreement, we remand to the board for a hearing on this issue.
 
 
 3
 In the settlement agreement, Harris agreed to forego future federal employment, his right to appeal his removal, and prosecution of an independent EEOC action against the Navy. In exchange, the Navy agreed to disclose only innocuous employment information to Harris's prospective private sector employers. Specifically, the Navy agreed to "notify any prospective private sector employers of Appellant only of the following information: a. dates of employment; b. position; and c. pay." Res.App. 3.
 
 
 4
 Indisputably, the SF-50 contained employment information which, by the language of the agreement, the Navy agreed not to disclose to Harris's prospective private sector employers. Res.App. 23. Thus, whether the Navy violated the agreement turns on whether the SF-50 would be available to prospective private sector employers of Harris. The AJ, however, eschewed this inquiry and instead concluded that the SF-50 was innocuous because it "serves to simply document the fact that appellant's separation was by resignation, rather than removal for cause." Res.App. 8.
 
 
 5
 While the SF-50 certainly documents that Harris's separation technically was by resignation, that does not insulate the SF-50 from the clear proscriptions of the settlement agreement. The SF-50 could both document appellant's resignation and disclose to Harris's prospective private sector employers information which the Navy agreed to maintain in secrecy. If the SF-50 would be available to Harris's prospective private sector employers, then the Navy has violated the agreement. The AJ erred by not addressing this question.
 
 
 6
 A decision on whether the SF-50 would be available to Harris's prospective private sector employers will also conclusively settle whether the board properly relied on the alleged parol agreement between Harris's attorney and the Navy's attorney. If the board determines on remand that the SF-50 would be available to the private sector, then the parol agreement contradicts the unambiguous terms of the settlement agreement, and cannot be considered by the board. Sylvania Electric Products, Inc. v. United States, 458 F.2d 994, 1005 (Ct.Cl.1972); cf. Greco v. Department of the Army, 852 F.2d 558, 560 (Fed.Cir.1988) (Only if there is ambiguity should parol evidence be used to interpret an MSPB settlement agreement). On the other hand, if the board determines that the SF-50 would not be available to the private sector, then the parol agreement is consistent with the unambiguous terms of the settlement agreement, and can properly be considered by the board. Sylvania, 458 F.2d at 1005. In the latter situation, of course, the settlement agreement would not have been violated and the board's reliance on the alleged parol agreement would be superfluous.
 
 
 7
 Although we express here no opinion on whether the SF-50 would be available to Harris's prospective private sector employers, on remand the board should consider Federal Personnel Manual Supplement 296-33, Subchapter 1, Section S1-4(c) ("Remarks are put on the SF-50 to explain the action to ... future employers ...") and Subchapter 30, Section S30-2(b) ("[F]uture employment decisions will be made on the basis of both the employee's reason and the agency's findings [stated on the SF-50]."). (September 30, 1988).
 
 
 8
 In sum, we vacate and remand to the board for a hearing on whether the information on the SF-50 would be available to Harris's prospective private sector employers. We hold that it would be available if a prospective employer could obtain it as a matter of right, or by requesting Harris to authorize the Navy or Office of Personnel Management (OPM) to release the information. In addition, we grant Harris's petition for correction of the erroneous data in sections 4 and 20 of the SF-50, Res.App. 27, although we authorize the board to delay ordering the Navy to correct this information until the board concludes its hearing on remand. Ultimately, the board shall order the Navy to refile with OPM a revised SF-50 incorporating the changes to sections 37 (if applicable), 4, and 20 proposed by Harris, id., and expressly inform OPM of the revisions and of this decision and the board's decision on remand.
 
 COSTS
 
 9
 Each party shall bear its own costs.
 
 
 10
 FRIEDMAN, Circuit Judge, dissenting.
 
 
 11
 I would affirm the Board.
 
 
 12
 Insofar as here pertinent, the Navy's obligations under the settlement agreement were to "notify any prospective private sector employers ... only" of the petitioner's "a. dates of employment; b. position; and c. pay" (paragraph 3) and "to supply a blank SF 52 for preparation" (paragraph 4). Form SF-52 is the standard form a government employee submits when he terminates his employment. Since the petitioner agreed in the settlement agreement to resign, the blank form SF-52 obviously was intended for him to use in resigning.
 
 
 13
 Form SF-50, which is the subject of the petitioner's charge that the Navy failed to comply with the settlement agreement, is the standard form the government uses to notify an employee of personnel action taken with respect to that employee. The petitioner's complaint is that the form SF-50 the Navy prepared for and presented to him states, as the "reasons for leaving," derogatory information relating to the termination of his employment. There is nothing in the settlement agreement, however, that refers to the form SF-50 or indicates what it will state. The Navy's limited obligations under the settlement agreement cannot fairly be read as precluding the Navy from stating the reasons for the termination of the petitioner's employment on the form SF-50.
 
 
 14
 This interpretation of the settlement agreement is confirmed by the affidavit of the Navy lawyer who represented his agency in the settlement negotiations. He stated that the petitioner's attorney and he "agreed that SF-50 would be worded to the effect that Mr. Harris resigned after receiving a decision to remove him" and that since "[a]t the time this seemed to be a 'non-issue,' " "it was not made part of the proposed CONSENT ORDER."
 
 
 15
 Relying on this affidavit is not an impermissible attempt to vary the terms of the written consent agreement by parol evidence. Rather, it is a proper invocation of evidence to show that the settlement's unambiguous language means precisely what it says and should not be expanded to cover a point that the settlement agreement did not include.
 
 
 16
 Although the administrative proceeding that the petitioner instituted purportedly was designed to obtain enforcement of the settlement agreement, the petitioner's real complaint is not that the Navy failed to carry out the settlement agreement, but that that agreement did not embody a restriction he wanted. Apparently he believed that the settlement agreement should have limited the Navy to stating on the form SF-50 only that he resigned or that he resigned to seek a disability retirement. In other cases, settlement agreements have included such a restriction. See e.g., Pryor v. Veterans Admin., 38 M.S.P.R. 49 (1988); Smith v. Department of Justice, 37 M.S.P.R. 374 (1988).
 
 
 17
 The settlement agreement that the petitioner signed, however, did not impose that restriction upon the Navy. The petitioner was represented by an attorney in the settlement negotiations, and both the petitioner and his attorney signed the settlement agreement. He cannot now be heard to complain because the Navy followed its customary personnel practice, with the approval of the petitioner's attorney and which the settlement agreement did not preclude, of showing on the form SF-50 the actual reason for the petitioner's resignation.